**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Yolanda Ortiz, | |
| Plaintiff, | Civil No. 3:25-cv-01495 (OAW) |
| v. | |
| Tracy Brown, *et al.*, | August 11, 2026 |
| Defendants. | |

**RULING ON MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS***
**AND RECOMMENDED RULING ON INITIAL REVIEW OF THE COMPLAINT**

This is a lawsuit filed by a *pro se* plaintiff, Yolanda Ortiz, against several employees of the Connecticut Department of Children and Families ("DCF") and the Superior Court. Ms. Ortiz alleges that the defendants "stripped [her] of [her] god given (common law) rights by removing [her] children without [her] right to due process."[1] She seeks "monetary damages" and "punitive damages," along with "an injunction to stop the neglect charge."[2] She also filed a motion for leave to proceed *in forma pauperis* – that is, she asked for permission to start a civil lawsuit without paying the customary $405.00 filing fee.[3]

The presiding District Judge, the Honorable Omar A. Williams, referred the case to me, Magistrate Judge Thomas O. Farrish, to rule on the *in forma pauperis* motion and to conduct an initial review of the complaint.[4] For the reasons explained in Section II.A, I will grant the *in forma pauperis* motion. As explained in Section II.B, however, Ms. Ortiz's lawsuit should not proceed because the Court should abstain from exercising jurisdiction over it.

---

[1]    Complaint, Docket No. 1, at p. 5.
[2]    Complaint, Docket No. 1, at p. 9.
[3]    Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2.
[4]    Order of Referral, Docket No. 10.

1

I.    BACKGROUND

The following facts are taken from Ms. Ortiz's complaint, and I assume them to be true for purposes of this review.[5]  On June 27, 2025, DCF Commissioner Jodi Hill filed a petition in the Connecticut Superior Court, alleging that Ms. Ortiz's two children were being "neglected, uncared for, and abused[.]"[6]  The petition alleged that the children "were being denied proper care, and attention, physically, educationally, emotionally, or morally[,]" and that they were "being permitted to live under conditions, circumstances or associations injurious to well being."[7]  Judge Tammy Nguyen-O'Dowd signed the petition and ordered that the children be taken away, even though the petition contained "fraudulent misrepresentation [and] hearsay[,]" and even though there had not been "full disclosure" to Ms. Ortiz.[8]

Months later, Ms. Ortiz filed this lawsuit against eight defendants – five DCF employees, two Superior Court judges, and one Superior Court clerk.[9]  She alleges that all eight defendants are responsible for taking her children away "without due process."[10]  In the case of some defendants, that is all she says, but she asserts some additional factual allegations against others. She asserts, for example, that DCF supervisor Ashley Johnson participated in the removal of her children "without proper investigation."[11]  She alleges that Commissioner Hill participated in the removal "under hearsay/fraud without investigating the situation."[12]  DCF Program Supervisor

---

[5]    *Gibson v. Cuomo*, No. 20-cv-1455 (JLS), 2021 WL 12301398, at *2 (W.D.N.Y. July 1, 2021).  If Ms. Ortiz were to amend her complaint, and if that amended complaint contained a claim that should proceed, she would of course bear the burden to prove her factual allegations later in the case.
[6]    Complaint, Docket No. 1, at p. 5.
[7]    Complaint, Docket No. 1, at p. 5.
[8]    Complaint, Docket No. 1, at p. 6.
[9]    Complaint, Docket No. 1, at pp. 1-4.
[10]    Complaint, Docket No. 1, at p. 5.
[11]    Complaint, Docket No. 1, at p. 3.
[12]    Complaint, Docket No. 1, at p. 3.

Lisa McEachern allegedly "sign[ed] off on paperwork that is fraudulent[,]" and "did not provide full disclosure . . . before removing [the] children."[13]  Superior Court Clerk Oliver Burgos "processed paperwork without investigation," and Judge Nguyen-O'Dowd allegedly "signed a petition on the record under fraud[.]"[14]

On the same day she filed her complaint, Ms. Ortiz also filed a motion for leave to proceed *in forma pauperis*, or "IFP."[15]  As noted above, Judge Williams referred her case to me to rule on the motion for leave to proceed IFP, and to conduct an initial review of the complaint.[16]

## II.    DISCUSSION

### A.    IFP Motion

Plaintiffs must ordinarily pay $405.00 to start a civil lawsuit in the United States District Court for the District of Connecticut, composed of a $350.00 filing fee and a $55.00 administrative fee.[17]  A plaintiff may have those fees waived, however, if she files an affidavit showing that she is "unable to pay such fees or give security therefor."[18]  To qualify as "unable to pay," the plaintiff does not have to demonstrate absolute destitution,[19] but she does need to show that "paying such fees would constitute a serious hardship."[20]  The United States Supreme Court has said that a plaintiff makes a "sufficient" showing of inability to pay when her application demonstrates that she "cannot because of [her] poverty pay or give security for the costs and still be able to provide [her]self and [her] dependents with the necessities of life."[21]

---

[13]    Complaint, Docket No. 1, at p. 4.
[14]    Complaint, Docket No. 1, at pp. 3-4.
[15]    Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2.
[16]    Order of Referral, Docket No. 10.
[17]    28 U.S.C. § 1914; 28 U.S.C. § 1915(a).
[18]    28 U.S.C. § 1915(a).
[19]    *Potnick v. Eastern State Hospital*, 701 F.2d 243, 244 (2d Cir. 1983) (per curiam).
[20]    *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (2007).
[21]    *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

Ms. Ortiz clearly qualifies for IFP status.  At the time of her application, she had just been released from incarceration and was unemployed.[22]  She had no income or assets.[23]  She had no cash on hand, nor any money in a savings or checking account.[24]  She clearly cannot pay $405.00 to start a lawsuit without depriving herself of "the necessities of life."  Her motion for leave to proceed *in forma pauperis* is therefore granted.

### B.  Initial Review of the Complaint Under 28 U.S.C. § 1915

IFP status comes with a consequence, however.  "Because IFP plaintiffs lack 'an economic incentive to refrain from filing frivolous, malicious or repetitive lawsuits[,]'" a federal law called 28 U.S.C. § 1915 "instructs the Court to review their complaints and dismiss certain types of abusive or facially unmeritorious claims."[25]  A federal court must, for example, dismiss a complaint when its review reveals that it has no jurisdiction over the case.[26]  A court must also dismiss the complaint if it "is frivolous or malicious;" "fails to state a claim on which relief may be granted; or . . . seeks monetary relief against a defendant who is immune from such relief."[27]

This case has jurisdictional problems, so I will begin by explaining the concept of jurisdiction, for Ms. Ortiz's benefit.  Jurisdiction is "[a] court's power to decide a case."[28]  It is a term that encompasses several concepts, including "subject matter jurisdiction" and "personal jurisdiction."  When a court asks itself whether it has "subject matter jurisdiction" over a case, it

---

[22]     Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2, at p. 7.
[23]     Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2, at pp. 4-5.
[24]     Motion for Leave to Proceed *In Forma Pauperis*, Docket No. 2, at p. 5.
[25]     *Emiabata v. Bartolomeo*, No. 3:21-cv-776 (OAW) (TOF), 2022 WL 4080348, at *5 (D. Conn. Jan. 3, 2022), *report and recommendation approved and adopted*, slip op. (D. Conn. Jan. 31, 2022) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)).
[26]     *McGann v. Social Security Administration*, 96 F.3d 28, 30 (2d Cir. 1996).
[27]     28 U.S.C. § 1915(e)(2).
[28]     Black's Law Dictionary (8th ed. 2004), at p. 867.

4

is asking whether it has the power to hear the type of claim that the plaintiff has brought.[29]  By contrast, when a court considers whether "personal jurisdiction" exists, it asks itself whether it has power over the parties.[30]

Like all federal courts, this Court is a court of "limited" subject matter jurisdiction, meaning that it cannot hear just any case.[31]  In this respect, the federal courts are unlike the Connecticut state courts.  The Connecticut Superior Court is a "court of general jurisdiction," meaning that it can decide a very wide array of cases.[32]  But federal courts "possess only that power authorized by Constitution and statute."[33]  Thus, when conducting an initial review of a complaint under 28 U.S.C. § 1915, the court starts with an analysis of jurisdiction – because if it does not exist, the court has no power to decide the case, no matter how strong it may be.[34]

Leaving aside some others that are not relevant here, Congress has authorized the federal district courts to hear and decide two principal types of cases.  First, federal courts may hear cases that "aris[e] under the Constitution, laws, or treaties of the United States."[35]  This is known as the "federal question" form of subject matter jurisdiction, because such a case raises questions about compliance with federal law.  Second, federal courts may decide cases between "citizens of different States" "where the matter in controversy exceeds the sum or value of $75,000."[36]  This is known as "diversity" jurisdiction, because when the plaintiff and the defendant are citizens of different states, their citizenship is said to be "diverse" from each other.

---

[29]    Black's Law Dictionary (8th ed. 2004), at p. 870.
[30]    Black's Law Dictionary (8th ed. 2004), at p. 870.
[31]    *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 377 (1994).
[32]    *State v. Butler*, 348 Conn. 51, 76 (2023) (D'Auria, J., concurring).
[33]    *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 377 (1994).
[34]    *Lawrence v. Charlotte Hungerford Hospital*, No. 3:25-cv-1022 (SVN) (TOF), 2025 WL 2644744 (D. Conn. Sept. 15, 2025).
[35]    28 U.S.C. § 1331.
[36]    28 U.S.C. § 1332.

There are exceptions to these principles, however – in other words, there are times when a federal court does not have jurisdiction, even though Congress otherwise provided for it. For example, federal courts often do not have jurisdiction to decide disputes over wills and estates, even when there is "diversity of citizenship."[37] Federal courts also frequently lack jurisdiction over "cases involving the issuance of a divorce, alimony, or child custody decree," even when the parties' citizenship is "diverse."[38] This last exception is known as the "domestic relations exception" to federal diversity jurisdiction.[39]

There are also times when, even though the federal court *has* jurisdiction, it *abstains* from exercising it. In other words, there are instances in which Congress gave the federal courts the power to hear the case, and no "exception to jurisdiction" applies, but the court nevertheless refrains from hearing it – often for the purpose of maintaining a proper relationship between the state and federal courts. For example, federal courts often refrain from hearing cases that ask them to decide the constitutionality of state laws, unless the state courts have had an opportunity to rule on them first.[40] They also generally refrain from hearing civil rights challenges brought by people who are currently being prosecuted for a matter arising from that claim in state court.[41]

Most relevant here, there is a "domestic relations abstention" principle, under which federal courts generally refrain from ruling on family relations and child custody issues, at least where they are "capable of being fairly resolved in state court."[42] The "domestic relations abstention"

---

[37]    *Lefkowitz v. Bank of New York*, 528 F.3d 102, 105 (2d Cir. 2007).
[38]    *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (2d Cir. 1992).
[39]    *Deem v. DiMella-Deem*, 941 F.3d 618, 621 (2d Cir. 2019).
[40]    *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 500-01 (1941); *see also Moore v. Sims*, 442 U.S. 415, 428 (1979); *Alliance of Auto Manufacturers, Inc. v. Currey*, 984 F. Supp. 2d 32, 51 (D. Conn. 2013).
[41]    *Younger v. Harris*, 401 U.S. 37, 54 (1971).
[42]    *Deem v. DiMella-Deem*, 941 F.3d 618, 624-25 (2d Cir. 2019).

principle is an outgrowth of the idea that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States."[43]   Put differently, the principle reflects a "policy consideration that the states have traditionally adjudicated marital and child custody disputes and therefore have developed competence and expertise in adjudicating such matters, which federal courts lack."[44]

In this case, Ms. Ortiz's complaint would seem to be within the Court's "federal question" jurisdiction.  She specifically invokes a federal statute, 42 U.S.C. § 1983,[45] and she seeks money damages for an alleged injury to her federally-protected due process rights.[46]   Moreover, the domestic relations *exception* would not seem to deprive the Court of jurisdiction, for two principal reasons.  First, the Second Circuit has held that the exception applies only in cases where federal jurisdiction is based on diversity of citizenship, not where –as here – the plaintiff has raised a federal question.[47]   Second, the exception is narrow, and it applies when the plaintiff directly challenges a child custody decree.[48]   In this case, while Ms. Ortiz does seek an "injunction to stop the neglect charge" against her, she does not directly and expressly seek an order overturning the Superior Court's custody determination.[49]

---

[43]   *In re Burrus*, 136 U.S. 586, 593-94 (1890).

[44]   *Thomas v. New York City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993).

[45]   Complaint, Docket No. 1, at p. 2.

[46]   Complaint, Docket, No. 1, at p. 9; *see also Stanley v. Illinois*, 405 U.S. 645, 651 (1972) ("The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment[.]"); *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 103-04 (2d Cir. 1999) (recognizing "that a parent's interest in the custody of a child is a constitutionally protected liberty interest subject to due process protection") (brackets, quotation marks and citation omitted).

[47]   *Deem v. DiMella-Deem*, 941 F.3d 618, 624 (2d Cir. 2019); *see also Cleary v. MacVicar*, 813 Fed. App'x 12, 14 (2d Cir. 2020) (summary order).

[48]   *See Williams v. Lambert*, 46 F.3d 1275, 1283 (2d Cir. 1995).

[49]   Complaint, Docket No. 1, at p. 9.

But while the domestic relations *exception* is not properly applied here, domestic relations *abstention* is.  The abstention principle applies in federal question cases as well as diversity jurisdiction cases.[50]  And it also applies to a range of child custody disputes, beyond straight-up challenges to a custody decree.[51]  While the exception applies only "where a federal court is asked to grant a divorce or annulment, determine support payments, or award custody of a child," the abstention principle applies to a broader range of issues "on the verge of being matrimonial," "so long as there is no obstacle to their full and fair determination in state courts."[52]

The case of *Cleary v. MacVicar* shows this principle in action.  In *Cleary*, a father sued the mother of his child and several other people involved in his state court custody dispute, including two Connecticut Superior Court judges.[53]  He claimed that the defendants deprived him of custody and visitation rights with his son in violation of the Fourteenth Amendment and Connecticut law.[54]  The district court dismissed his case for lack of jurisdiction under the domestic relations exception,[55] and he appealed.[56]  The Court of Appeals affirmed the dismissal, but in doing so, it explained the difference between the exception and the abstention principle.  While the district court had "incorrectly explained its dismissal on the basis of the domestic relations exception to

---

[50]    *Deem v. DiMella-Deem*, 941 F.3d 618, 624 (2d Cir. 2019).

[51]    *Cf. Schottel v. Kutyba*, No. 06-1577-cv, 2009 WL 230106, at *1 (2d Cir. Feb. 2, 2009) (summary order) (affirming dismissal of a plaintiff's fraud claim seeking money damages, because it was, "at heart, a dispute surrounding the custody of her child," and observing that "a plaintiff cannot obtain federal jurisdiction merely by rewriting a domestic dispute as a tort claim for monetary damages").

[52]    *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990).

[53]    *Cleary v. Bonjour*, No. 3:17-cv-1957 (VLB), 2018 WL 2390140, at *1 (D. Conn. May 25, 2018).

[54]    *Cleary v. Bonjour*, No. 3:17-cv-1957 (VLB), 2018 WL 2390140, at *1 (D. Conn. May 25, 2018).

[55]    *Cleary v. Bonjour*, No. 3:17-cv-1957 (VLB), 2018 WL 2390140, at *2 (D. Conn. May 25, 2018).

[56]    *Cleary v. MacVicar*, 813 Fed. App'x 12 (2d Cir. 2020) (summary order).

subject matter jurisdiction," because the exception "does not apply to suits that assert jurisdiction by pleading a federal question[,]" "the dismissal was nonetheless appropriate as an exercise of domestic relations abstention."[57]   Claims like Mr. Cleary's were "on the verge of being matrimonial in nature," and there was "no obstacle to their full and fair determination in state courts."[58]

Ms. Ortiz's case is like Mr. Cleary's, and Judge Williams should decline to exercise jurisdiction over it for the same reason.  The gist of her claim is that "DCF and the Judges stripped [her] of [her] God-given (common law) rights by removing [her] children without due process [and denied her] fundamental right to parent [her] children."[59]  Thus, her claims clearly involve domestic relations issues.  Specifically,  (1) Ms. Ortiz claims she has not seen her children since July 2025; (2) the defendants fraudulently misrepresented to the court she abused drugs and her children; (3) the defendants placed her children "with a stranger that [her children did not know], thus placing them in danger"; and (4) the Judge and DCF placed her children in harm's way by placing them with their father, who "isn't letting [her] talk" to them.[60]  If the court were to consider Ms. Ortiz's claim, it would be required to intrude into a state court family matter – and that is not appropriate for a federal court.[61]  And finally, Ms. Ortiz's complaint supplies no reason to believe that her claims could not be fully and fairly addressed in the state court.

---

[57]   *Cleary v. MacVicar*, 813 Fed. App'x 12, 14 (2d Cir. 2020) (summary order) (emphasis in original).

[58]   *Cleary v. MacVicar*, 813 Fed. App'x 12, 14 (2d Cir. 2020) (summary order).

[59]   Complaint, Docket No. 1, at p. 5.

[60]   Complaint, Docket No. 1, at pp. 5-9.

[61]   *See e.g., Chapman v. United States Department of Justice*, 558 F. Supp. 3d 45, 51 (E.D.N.Y. 2021).

## III.   CONCLUSION

In sum, I recommend that Judge Williams abstain from exercising jurisdiction over the case, and that he dismiss all of Ms. Ortiz's claims without prejudice to repleading.   If my recommendation is accepted, this would mean that Ms. Ortiz could file an amended complaint attempting to cure the defects discussed in this recommended ruling – in other words, an amended complaint that properly invokes the court's jurisdiction, and that contains enough factual material to permit the reasonable inference that defendants are liable to her for the misconduct that she alleges.   There may be no cure for the defects in her complaint, but plaintiffs are usually permitted at least one try.[62]   Of course, Ms. Ortiz may also bring any claims that are available to her in the Connecticut Superior Court – which, unlike this Court, is a court of general jurisdiction.

This is a recommended ruling by a Magistrate Judge.[63]   **If Ms. Ortiz wishes to object to my recommendation, she must file that objection with the Clerk of the Court by August 31, 2026.[64]**   If she fails to file a timely objection, her failure "operates as a waiver of any further judicial review[.]"[65]  In particular, failure to file a timely objection operates as a waiver of the right to seek appellate review in the Court of Appeals.[66]

/s/ Thomas O. Farrish

Hon. Thomas O. Farrish
United States Magistrate Judge

---

[62]   *See, e.g., Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (observing that *pro se* plaintiffs are often permitted "leave to amend at least once").

[63]   Fed. R. Civ. P. 72(b)(1); D. Conn. L. Civ. R. 72.1(C).

[64]   *See* Fed. R. Civ. P. 72(b)(2) (stating that objections to magistrate judge recommendations shall be filed within fourteen days); D. Conn. L. Civ. R. 72.2(a) (allowing five additional days for persons who, like Ms. Lawrence, will receive the recommendation from the Clerk of the Court via mail); Fed. R. Civ. P. 6(a)(1)(C) (stating that where, as here, a deadline would fall on a Sunday, "the period continues to run until the end of the next day" that is not a weekend or holiday).

[65]   *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

[66]   *Small,* 892 F.2d at 16; *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6; *see also Impala v. U.S. Dep't of Justice*, 670 F. App'x 32 (2d Cir. 2016) (summary order).